UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No.: 11--61605-Civ-SCOLA

LISA TORRES,

    Plaintiff,

vs.

THE PRUDENTIAL INSURANCE
COMPANY OF AMERICA,

    Defendant.

_____/

## ORDER ON CROSS-MOTIONS FOR SUMMARY JUDGMENT

THIS MATTER is before the Court on the parties' cross motions for summary judgment (ECF Nos. 29, 30). For the reasons explained in this Order, the Plaintiff's Motion for Summary Judgment is denied, and the Defendant's Motion for Summary Judgment is granted.

### I. BACKGROUND

This is an ERISA benefits denial case. The Plaintiff, Lisa Torres, received long term disability benefits through a plan insured by the Prudential Insurance Company of America. Under this plan, a participant is considered disabled and entitled to long-term disability benefits when Prudential determines that "you are unable to perform the *material and substantial duties* of your *regular occupation* due to your *sickness* or *injury*; and you have a 20% or more loss in your *indexed monthly earnings* due to that sickness or injury." (ECF No. 28-4.) The Plaintiff bears the affirmative burden of proving her claim to benefits. *See Horton v. Reliance Standard Life Ins. Co.,* 141 F.3d 1038, 1040 (11th Cir. 1998).

Prudential granted Torres Long Term Disability (LTD) benefits on December 3, 2010 based on reports by Torres's Rheumatologist Dr. Alberts. In these reports, Dr. Alberts diagnosed Torres with Systemic Lupus Erythematous and Raynaud's phenomenon. Dr. Alberts documented Torres's symptoms as fatigue, joint pains, headache, forgetfulness, loss of memory, subtle mental changes, nausea and vomiting, puffy hands, and hives of her chest and neck wall. Dr. Alberts attributed her symptoms to "exacerbated stress" due to her job and an impending divorce. A CT scan performed on March 20, 2009 was negative with the exception of mucosal thickening indicative of chronic sinusitis. On September 4, 2009, Dr. Alberts noted "neurologically she is awake, alert and oriented with normal gait." Torres did not return to work

after September 9, 2009. Torres's Long Term Disability benefits were approved through February 28, 2010.

On April 27, 2012, Prudential requested that Torres submit a completed questionnaire, and that she contact Dr. Alberts to follow up with Prudential's request for dictated office notes and additional reports. By letter, Prudential stated that if it did not receive the requested medical information Torres's claim may be suspended or terminated. On June 17, 2010, Prudential terminated Torres's long-term benefits as a result of not receiving the requested information and materials. After receiving additional documentation from Torres, Prudential sent a follow-up letter to Torres, on July 9, 2010, upholding the decision to terminate benefits. Prudential's decision to terminate Torres's benefits was based on her medical history, including doctors' visits on January 27, 2010 and March 24, 2010. During these visits, Dr. Alberts noted that Torres was under less stress after receiving disability. He noted persistent Raynaud's phenomenon which was worse in cold weather and with any prolonged standing. He reported that neurologically she was awake, alert and oriented, but had slightly puffy hands, increasing joint pain and stiffness, and rashes. Prudential denial was based on finding a lack of ongoing limitations or medical reasons that would restrict Torres's functional capacity.

On August 4, 2010, Torres filed her first level appeal. On September 16, 2010, Prudential upheld its decision on appeal. Prudential considered Torres's medical history, including two additional visits to Dr. Alberts, and two independent peer reviews of Torres's history. On a July 20, 2010 visit to Dr. Alberts, Torres indicated that she had recently been diagnosed with HPV by her OB/Gyn. A cervical biopsy indicated that she had cervical inflammation but no cancer cells. Torres also reported a flare-up of her lupus. Dr. Alberts noted that Torres had swelling of her hands and feet with severe pain which was worse with any activity or exertion. He recorded marked fatigue, memory loss, forgetfulness, swelling of her hands and feet, increased Raynaud's phenomenon, as well as rashes. Based on his exam, Dr. Alberts's impression was that Torres's Lupus was complicated by Raynaud's phenomenon and erythomelalgia. Dr. Alberts noted that Torres was suffering from a severe flare and ". . . unable to work at this point." He indicated that Torres was "totally disabled" and "will require close medical supervision." He also noted "Neurologically, she is awake, alert and oriented x3. Gait was normal, although she was forgetful during her visit with evidence of decreased memory."

On September 1, 2010, Torres visited Dr. Alberts for follow up. He noted increasing fatigue and decreasing memory and concentration. The Doctor noted, "Presently she has difficulty with any daily activities. In fact, she is frequently so fatigued that her children actually must clean the house and make her meals." Dr. Alberts opined Torres was "unable to work due to the flare up and severe activity of her underlying SLE with its multitude of symptoms and complaints."

In September 2010, Prudential referred Torres's medical records to two peer reviewers, Dr. Taylor and Dr. Borigini. After reviewing Torres's medical records and speaking to Dr. Alberts, the peer reviewers found no medical restrictions or limitations that precluded Torres from performing the material and substantial duties of her regular occupation. Dr. Borigini's report notes, "Aside from avoiding colder environments due to the Raynaud's, it is my opinion the claimant does not have functional impairment from a rheumatologic perspective." Dr. Taylor's report states, "The claimant's self-reported chronic pain is not supported by diagnostic testing and physical examination findings."

Torres filed a second level appeal. On March 26, 2011, Prudential responded upholding its decision to terminate benefits. Prudential reviewed Torres's medical history and two additional visits to Dr. Alberts which occurred on November 5, 2010, and January 14, 2011. During these visits Dr. Alberts reported that Torres had worsening memory loss and appeared to be "partially in a fog." Dr. Alberts noted that his patient was under "a great deal of stress in her life including her divorce." Dr. Alberts evaluated Torres on January 14, 2011 following her visit to Dr. Ross, a Neurologist. An MRI was ordered but was not completed due to expense. According to Dr. Alberts's notes, Dr. Ross reported that Torres's symptoms were related to "more than anxiety and depression." Dr. Alberts' summary of her visit notes SLE, history Raynaud's phenomenon and erythromelalgia, fatigue, memory lapses, hypersomnolence, and hand discomfort.

Prudential's final decision to terminate Plaintiff's LTD benefits was based on inconsistencies in Torres's self-reported symptoms and the medical documentation and testing as well as lack of clinical evidence supporting a cognitive deficit that would preclude Torres from performing the material and substantial duties of her regular occupation.

## II. LEGAL STANDARDS

Although this matter is before the Court on cross motions for summary judgment, in an ERISA benefits denial case "the district court sits more as an appellate tribunal than as a trial court." *See Curran v. Kemper Nat. Servs., Inc.,* No. 04-14097, 2005 WL 894840, at *7 (11th Cir. Mar. 16, 2005). The court "does not take evidence, but, rather, evaluates the reasonableness of an administrative determination in light of the record compiled before the plan fiduciary." *Id.* Thus, there "may indeed be unresolved factual issues evident in the administrative record, but unless the administrator's decision was wrong, or arbitrary and capricious, these issues will not preclude summary judgment as they normally would." *Pinto v. Aetna Life Ins. Co.*, No. 09-01893, 2011 WL 536443, at *8 (M.D. Fla. Feb. 15, 2011); *Turner v. Am. Airlines, Inc.*, No. 10-80623, 2011 WL 1542078, at *4 (S.D. Fla. Apr. 21, 2011) ("[W]here, as here, the decision to grant or deny benefits is reviewed for abuse of discretion, a motion for summary judgment is merely the conduit to bring the legal question before the district court and the usual tests of summary judgment, such as whether a genuine dispute of material fact exists, do not apply.")

Under 29 U.S.C. § 1132(a)(1)(B), a benefit plan participant or beneficiary may bring a civil action to recover benefits due to her under the terms of the plan, and to enforce or clarify her rights under the terms of the plan. The provision does not set forth the appropriate standard of review for actions challenging benefit eligibility determinations. *See Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 109 (1989). Where a plaintiff challenges a denial of benefits under Section 1132(a)(1)(B), a court must review such denial "under a de novo standard unless the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan." *Id.* at 115.

The Eleventh Circuit developed a multi-step framework for analyzing an administrator's benefits determination:

> (1) Apply the *de novo* standard to determine whether the claim administrator's benefits-denial decision is "wrong" (*i.e.*, the court disagrees with the administrator's decision); if it is not, then end the inquiry and affirm the decision.
> (2) If the administrator's decision in fact is "*de novo* wrong," then determine whether [the administrator] was vested with discretion in reviewing claims; if not, end judicial inquiry and reverse the decision.
> (3) If the administrator's decision is "*de novo* wrong" and he was vested with discretion in reviewing claims, then determine whether "reasonable" grounds supported it (hence, review his decision under the more deferential arbitrary and capricious standard).

(4) If no reasonable grounds exist, then end the inquiry and reverse the administrator's decision; if reasonable grounds do exist, then [end the inquiry and affirm the decision].

See *Capone v. Aetna Life Ins. Co.*, 592 F.3d 1189, 1195-96 (11th Cir. 2010).

### III. Discussion

Prudential, as Plan administrator, was vested with discretion in reviewing claims. (Plan D00613, ECF No. 28-3) Consequently, even if the decision to deny Torres's benefits was wrong, the ultimate question in this case is whether reasonable grounds supported that decision; in other words, whether Prudential's final decision to deny Torres's benefits was arbitrary and capricious. *Capone*, 592 F.3d at 1195.

Prudential relied on multiple reports from Dr. Alberts as well as reports from two independent peer reviewers in its denial of Torres's claim. Based on Dr. Alberts's reports, as well as the conclusions of the peer review reports, Prudential found that Torres did not display evidence of significant physical impairment. While the peer reviews acknowledged that Torres complained of memory loss and concentration problems, the peer reviews both noted there was no clinical evidence to support these complaints.

The reports from Dr. Alberts, even taken in a light most favorable to Torres, simply do not establish that Torres was unable to perform the material and substantial duties of her job due to her afflictions. The peer reviews relied on by Prudential, further call into question both Torres's complaints and Dr. Alberts's conclusions by pointing out the lack of objective data supporting Dr. Alberts's conclusions and recommendations. In summary, while it certainly appears that Torres had some physical symptoms associated with her diagnoses there is nothing in her medical records to support a conclusion that, as a result of her medical conditions, she was unable to perform the material and substantial duties of her job. Given these facts, this Court cannot say that Prudential's decision to terminate her LTD benefits was unreasonable.

### IV. CONCLUSION

Having considered the arguments of the parties, the record, and the relevant legal authorities, this Court finds that Prudential's decision to terminate Torres's long term benefits under the Plan was not arbitrary or capricious. It is **ORDERED and ADJUDGED** that the Plaintiff's Motion for Summary Judgment (ECF No. 30) is **DENIED**, the Defendant's Motion for Summary Judgment (ECF No. 29) is **GRANTED**. This matter is removed from the calendar

call, which was previously set for July 24, 2012.  The Clerk is directed to **CLOSE** this matter. Any pending motions are denied as moot.

      **DONE and ORDERED** in chambers, at Miami, Florida on July 23, 2012.

                                                                          **ROBERT N. SCOLA, JR.**
                                                                          **UNITED STATES DISTRICT JUDGE**

*Copies to:*
Counsel of record